CENTRAL TRUST CO. et al. v. CONTINENTAL TRUST CO. OF CITY OF NEW YORK et al.

(Circuit Court of Appeals, Eighth Circuit.    April 4, 1898.)

No. 1,008.

1. ASSIGNMENT OF ERRORS—INCORPORATING IN PETITION—SEPARATE FILING.
    Where plaintiff in error incorporates the errors complained of into the petition for appeal, and the petition is then filed with the clerk, the assignment of errors is "filed with his petition," as required by rule 11 (21 C. C. A. cxii., 78 Fed. cxii.).

2. SAME—VARIOUS ERRORS—A SINGLE PROPOSITION—SEPARATE ASSIGNMENTS.
    Where various errors are complained of, presenting a single proposition of law common to all of them, they need not be separately stated as so many distinct propositions.

3. PARTIES TO APPEAL—CORRECTING RECORD.
    One who joins in the petition for appeal, though not in the appeal bond, which is executed by his co-appellant, is a party to the appeal; and if, by oversight of the clerk, his name is omitted from the printed record, the error may be corrected by the clerk.

4. APPEAL DURING TERM—CITATION.
    When an appeal is taken and perfected during the term at which the decree is rendered, no citation is necessary.

5. RAILROAD RECEIVERSHIP—ADOPTION OF LEASE—LIABILITY FOR RENT.
    Where a railroad is in the hands of a receiver to be operated, if, after due investigation, the receiver decides that a lease of a portion of the line is indispensable to the successful operation of the road, and the court, on consideration, so determines, notifies the lessor, and continues the possession under the lease, such acts constitute an adoption of the lease, and carry with it the obligation to pay the rent therein stipulated.

6. SAME—RENT AS OPERATING EXPENSE—PREFERENTIAL LIEN.
    When a lease of part of a line of railroad has been adopted by the receiver and court, the rent should be paid as an operating expense; and, where the receiver has been unable to procure money for its payment, it is proper, on final decree, to declare the unpaid rentals a first lien on the property, and direct that the same, with interest, be paid out of the proceeds of the sale, as a preferential lien.

Appeal from the Circuit Court of the United States for the District of Colorado.

The Colorado Midland Railway Company was organized under the statutes of Colorado in 1883. It constructed a railroad from Colorado Springs, Colo., running in a westerly direction, via Leadville, across the summit of the mountain known as "Hagerman Pass," to Glenwood Springs, Colo. From a station

known as "Busk," on the eastern side of the ascent to the pass, this road was constructed through the pass to a station on the western descent known as "Ivanhoe." The distance between these two points was 9.8 miles. This pass attained a very high elevation, and, on account of tunnels and trestleworks, was very difficult and expensive of operation. In 1888 the Aspen Short-Line Railway Company was constructed on the west side of this mountain slope, connecting with the Colorado Midland Railway, and running to the town of Aspen. In 1893 these two roads were consolidated as the Colorado Midland Railroad Company; the Midland road succeeding to all the rights and liabilities of the two companies. On account of the hazards and difficulties in operating the railroad over said pass from Busk to Ivanhoe, the practical owners of the railroad conceived the project of running a tunnel through the mountain from Busk to Ivanhoe, a distance of about 2.9 miles. To this end they organized a corporation, under the laws of Colorado, known as the Busk Tunnel Railway Company. In order to raise the necessary money for the construction of this tunnel, the Busk Tunnel Railway Company (hereinafter, for convenience, called the "Tunnel Company") gave a mortgage deed on the 17th day of June, 1890, to the appellee the Continental Trust Company of the City of New York (hereinafter called the "Continental Trust Company") to secure 1,500 of its bonds, of the par value of $1,000 each, with interest at the rate of 7 per cent. per annum. Contemporaneously with the execution of this mortgage, the Tunnel Company, as party of the first part, the said Midland Railway Company, as party of the second part, and appellee the Continental Trust Company, as party of the third part, entered into a written contract respecting the use of the tunnel, when completed, by the said Midland Railroad Company. It stipulated, inter alia, that the Midland Company should use the tunnel on the payment monthly to the trustee, the Continental Trust Company, of 25 cents for each passenger transported through the tunnel, and 25 cents for each ton of freight so transported, which money the trustee was to apply to the payment of taxes, to interest upon said bonds, and the payment of such sums as might be necessary to enable the Tunnel Company to perform its covenants in said mortgage, and to the payment of a sum not exceeding $5,000, in any one year to the board of directors of the Tunnel Company, and also to the payment of such sums as should be required to maintain the tunnel in good order and repair, and to provide a sinking fund for said bonds. The contract required that all passenger and freight cars over said railway company should pass through said tunnel. This was followed on the 19th of June, 1890, by a contract of lease between the Tunnel Company, as lessor, party of the first part, the Colorado Midland Railroad Company, as lessee, party of the second part, and appellee the Continental Trust Company, as party of the third part, running from July 1, 1892, to July, 1935, subject to the conditions of the mortgage and of the agreement of June 17, 1890. Among other things, the Midland Railway Company agreed to take possession of and operate said tunnel road, subject to the conditions of the lease, and to pay all the taxes upon the property, premiums of insurance upon the buildings, interest upon the bonds of the Tunnel Company secured by said mortgage, the amounts necessary for the creation of said sinking fund, and on or about the 1st of July in each year to pay to the Tunnel Company or the Continental Trust Company a sum not exceeding $5,000 for meeting the administration expenses of the Tunnel Company; and the said Midland Railway Company further assumed the performance of the conditions of the said deed of trust, and agreed to maintain the tunnel in good order during the existence of the lease. The contract of lease gave to the Continental Trust Company the right to enforce the covenants of the lease, either by suit in equity or at law, or by entry upon the premises. It further provided that the trackage agreement of June 17, 1890, should not be deemed to be merged in the lease; and the railway company thereby assumed the observance and performance of the undertakings of the Tunnel Company in the agreement of June 17, 1890. Upon the completion of the tunnel, in the latter part of 1893, the Midland Railroad Company, under said agreement of lease, took possession of, and continued to use, said tunnel; abandoning the use of its track through said Hagerman Pass, between Busk and Ivanhoe.

In 1886 said Midland Railway Company executed to the appellant the Central Trust Company a mortgage to secure its first mortgage bonds to the amount

of $6,250,000; and on January 2, 1890, it executed to said Central Trust Company a second mortgage on the consolidated road to secure its consolidated mortgage bonds to the amount of $6,000,000. On the 2d day of February, 1894, the said Central Trust Company, as trustee, filed in the circuit court of the United States for the district of Colorado its bill of foreclosure on the second mortgage bonds, on default of the Midland Railway Company to pay its interest; praying for the appointment of receivers to take charge of and operate said road pendente lite. This bill asked that said receivers be appointed to take charge of said Midland Railroad Company, its rolling stock, franchises, and property, real, personal, and mixed, belonging to said company "either as owner, lessee, tenant, or otherwise." Thereupon the court appointed as such receivers Messrs. Reinhart, McCook, and Wilson, who were at that time the receivers of the Atchison, Topeka & Santa Fé Railroad Company, which was operating the Midland Railroad Company under a conventional arrangement between the two roads. The court made the customary order of injunction, restraining all persons from taking possession of or interfering with said property, and specifically directing the receivers to take possession of all the property described or referred to, "and to continue the operation of said railroad and system, and every part and portion thereof, and to run, manage, and operate the said railroads, and such other railroads as said defendant railway company holds, controls, or operates under lease, contract, arrangement, or otherwise, and as heretofore run and operated." And it further authorized the receivers to operate "said system of railroads so under lease, or operated or controlled by, or in the interest of, said Colorado Midland Railroad Company, * * * in such a manner as will, in their judgment, produce the most satisfactory results," etc. On October 11, 1894, the receivers filed a petition in the foreclosure proceedings, which recited, in substance, that by using said tunnel railroad the Midland Railroad Company was enabled to avoid the heavy grades and severe curvatures through Hagerman Pass, and to escape the deep snows incident thereto, and that by using the tunnel they were "enabled to greatly reduce the expense of operating between said stations," and that in their judgment they should continue to use said tunnel. They also stated that that portion of the Midland Railroad running from the summit as aforesaid between Busk and Ivanhoe had "become wholly useless, and no longer necessary in the operation of the railroad; that in consequence of such disuse the portion abandoned as aforesaid was greatly out of repair, and by reason of the action of the elements would soon be unsafe to move trains over" the same, —and prayed for authority to remove the rails and other movable structure or property from said abandoned portion of the line, as the property so removed could be profitably used upon other portions of the Midland Railroad. The Central Trust Company appeared to this petition, and filed answer, stating, in substance, that it represented the bondholders of the Midland Railroad Company, some of whom objected to the proposed abandonment of the track over the summit of said mountain, and to the dismantling thereof, while some of the holders of the consolidated mortgage bonds were favorable thereto, and, declining to consent, asked the court to institute inquiry into the advisability of the proposed action, and for its order in the premises. Judge Caldwell, the circuit judge who had in special charge the conduct of administration of this receivership, without referring the matter to a master for report, upon consideration granted the prayer of this petition, and authorized the removal of the property from the abandoned line, which was accordingly done. On the 11th day of February, 1895, the appellee the Continental Trust Company filed an intervening petition in said foreclosure proceeding; setting out the substance of the provisions of said contract of June 17, 1890, the lease of June 19, 1890, and the mortgage of the Tunnel Company to said appellee. This petition alleged default in the payment of interest coupons upon said bonds of the Tunnel Company which had matured on the 1st day of July, 1894, and the 1st day of January, 1895, and that the receivers had failed to pay same under said order of February 2, 1894, respecting the payment of trackage service of other railroads, and prayed for an order of the court directing the receivers "to carry out and perform said mortgage agreement, said trackage agreement, and said contract of lease, and to pay, as an operating charge of the said Colorado Midland Railroad Company, the defaulted and overdue interest coupons of the Tunnel Company mortgage bonds aforesaid, and the interest on said bonds hereafter to accrue." To this petition

the receivers appeared and answered, admitting the allegations of the petition, and united with the Continental Trust Company in the prayer of said petition; asking that an order granting them leave to borrow money with which to pay the tunnel rentals be made. The Central Trust Company also appeared, and made answer to this intervening petition, and, among other things, stated that some of the holders of said consolidated bonds·were also holders of the tunnel bonds, and that there was among the holders of the consolidated bonds a difference of opinion as to whether this petition should be granted, and the interest of the tunnel bonds should be made an operating charge, as prayed for, and asked for an inquiry into the truth of the allegations of the petition, and upon the coming in of the report of the master, or on such hearing as the court might direct, such order be made as to the court seemed just.

Judge Caldwell, without referring the matter to a master, considered the facts, and on the 11th day of February, 1895, entered ·a decree, the essential portions of which are as follows: "Ordered, adjudged, and decreed that said receivers are hereby authorized and directed to carry out and perform the trackage agreement of the 17th of June, and the agreement of lease of the 19th of June, 1890, executed between the Busk Tunnel Railway Company, the Colorado Midland Railway Company, and the Continental Trust Company of the City of New York, trustee, and to pay, as an operating charge of said Colorado Midland Railroad Company, the rentals and interest charges provided for in said agreements, including all defaulted or overdue interest coupons of the bonds of said Busk Tunnel Railway Company; said bonds bearing date of 1st day of July, 1890, and payable on the 1st day of July, 1935, for the principal sum of one million five hundred thousand dollars ($1.500,000), with interest at the rate of seven per cent. per annum, payable semiannually. And it is further ordered that the said receivers be, and they hereby are, authorized to borrow, upon the best terms they may be able to secure, such sum or sums of money as may be necessary to make such payments, and upon such loans so made for the purpose aforesaid they are hereby authorized to issue and deliver to the party or parties, bank or banks, corporation or corporations, from whom they may borrow such money or sums of money, their obligations as receivers of the Colorado Midland Railroad, bearing not more than six per cent. interest per annum, in such form and for such time or times as may seem best to them for the interest of their trust; and they are hereby authorized from time to time to renew said loans as they may become due, if they are unable to make payment thereof, and, in case they are not able to renew the same with the parties from whom such loans may be procured, they are hereby authorized to borrow from others such sums, on like terms, as may be necessary to take up such obligations as they mature." The interest on the tunnel bonds which fell due July 1, 1894, and January 1, 1895, was paid by the receivers in pursuance of this order, conformably to the requirements of the trackage agreement and lease. The said named receivers having been succeeded, under order of court, by one Ristine, as receiver, the latter receiver, under the order last aforesaid, paid said interest falling due July 1, 1895, and January 1, 1896.

On the 11th day of March, 1895, the appellant the Central Trust Company instituted a further suit in said court for the foreclosure of the first mortgage of the Colorado Midland Railway Company; alleging default in the payment of interest. The bill prayed for the appointment of a receiver for said railroad company for all its property belonging to it "either as owner, lessee, tenant, or otherwise." Whereupon the court appointed the same receivers as theretofore, under like order and direction. On the 16th day of April, 1895, said receivers petitioned the court for authority to. borrow money to pay said rental; reciting the intervening petition aforesaid of the appellee on the 6th day of February, 1895, and the order aforesaid made thereon by the court, and their inability to pay same out of the income of the road, and asking permission to issue receivers' certificates which might create a preferential lien upon said property. To this petition the Central Trust Company made answer, admitting the allegations contained in the petition to be true, and further stated "that a committee representing a large majority of the first mortgage bonds, and a large amount, if not a majority, of the second mortgage bonds, has instructed complainant that it is not advisable to oppose the granting of the order prayed for," and submitted itself to the judgment of the court. On May 2, 1895, the court made an order

consolidating the foreclosure proceedings in said two cases, and thereupon, in the consolidated cases, recited the resignation of the original receivers, and appointed George W. Ristine as sole receiver; and in this same connection the court ordered that all obligations entered into by the former receivers under orders of the court, and all their contracts and liabilities incurred in the operation of said railroad, were confirmed, and their observance and execution were imposed upon said Ristine. On the 3d day of November, 1896, the Central Trust Company filed an amended and supplemental bill of complaint in the consolidated cases, setting forth as among the leasehold interests embraced in the mortgaged property the said lease of the Tunnel Company, and alleged that "the said defendant and the receivers appointed herein have ever since said last-mentioned date (December 16, 1893) continued to hold, use, and enjoy the same under and in pursuance of the terms of said lease." This amended bill further alleged "that the said road leased from said Tunnel Railway Company connects the road of the said defendant on the eastern side of the range of mountains, at a station called 'Busk,' with its road on the western side of said range of mountains, at a station called 'Ivanhoe,' and that the defendant has no means of operating its trains between said points of Busk and Ivanhoe, except over said road of the said Busk Tunnel Railway Company." The object of this supplemental bill was to subject to the lien of the mortgages these leasehold estates; and further on it alleged that this Tunnel Railway Company was "absolutely necessary to the proper, profitable, and successful operation of the railways and railway property owned by said defendant company." The bill prayed that this mortgage deed be declared a primary lien upon all the properties acquired by, under, and through said leases, and that the consolidated mortgage be decreed a lien, subject only to the prior lien of the mortgage.

On July 3, 1896, the receiver, Ristine, presented his petition to the court, asking to be relieved from the payment of the interest upon the tunnel bonds which fell due July 1, 1896, upon the ground that he was unable to obtain the money with which to pay said interest. Like action was taken after default in payment of interest of January 1, 1897. None of the parties in interest had notice, or appeared to the petitions. The court, however, made the order suspending payment of this interest until further order of the court. In this condition of affairs, on May 4, 1897, a final decree of foreclosure was rendered in the consolidated cases. This decree, among other things, recited that the said mortgages were a lien upon all the property and franchises specified in the mortgages and the bill of complaint, including the lease of the Tunnel Company, and directed that the railroad properties be sold as one property, as constituting one system, incapable of severance without injury to the rights of the parties concerned. Upon learning of the action of the court in authorizing the receiver to suspend payment of said rentals until further order of the court, and of the final decree of foreclosure, the Continental Trust Company, on the 19th day of May, 1897, with leave of court, filed a further intervening petition in the consolidated cause, reciting the history of the trackage agreement and the contract of lease, and the taking possession of said tunnel track by the Midland Railroad Company and the receivers, and the said order of the court of February 11, 1895, directing the performance of said trackage agreement and said lease by the receiver, and directing him to pay the interest on the tunnel bonds as of the operating expenses of the road by the receiver, and a failure of the receiver to pay the accrued interest of July 1, 1896, and January 1, 1897, and the said orders of court suspending the payment thereof, and the final decree of foreclosure. The intervener alleged its ignorance of said orders of suspension and the entering of the final decree until after the date of the final decree. The intervening petitioner prayed the court for an order postponing the foreclosure sale, that the orders suspending the payment of interest upon the tunnel bonds be modified or reformed, as also the decree of foreclosure, in order to protect the trust committed to the petitioner, and for an order directing the receiver to pay said defaulted interest, and for all interest accruing during the time the receiver should continue in possession of the property, and that the same be declared an operating charge of the receivership, and further that, upon the failure of the receiver to pay same, said rentals be made a charge and lien upon the corpus of the Midland Railroad, preferable to said mortgages, to be paid out of the proceeds of the sale of the property. To this petition the receiver, the Central

Trust Company, and the railroad company appeared and filed answer. As only the matters stated in the answer of the Central Trust Company are in issue, it is only necessary to refer to the substantive matters set up by it. This answer, among other things, pleaded that it was in no wise connected with, nor consented to, the giving of the mortgage of the Tunnel Company, or to the making of said trackage agreement and lease, nor were any of the bondholders parties thereto. The answer then reiterated the substance of its answer made to the petition upon which the order of February 11, 1895, was made, and charged that, notwithstanding its request that a hearing be had upon said petition, none was had, and the order was made alone upon the allegations of the petition, and the answer of the receiver. It then alleged that the trackage agreement and contract of lease of June 17 and 19, 1890, were unfair, and inequitable in their terms, to the Midland Railroad Company, and ought not to be enforced against the receiver or the trustee, the Central Trust Company. It then alleged that, at the time of the execution of the first and second mortgages by the Midland Railroad Company, it operated its road between Busk and Ivanhoe over said Hagerman Pass, and that this portion of the road formed a valuable part of the security for said bonds; that the discontinuance of said road through Hagerman Pass was without the request or consent of the complainant or the bondholders; that the petition aforesaid of the receiver to the court for leave to abandon the said road over the summit of the mountain, and to remove the rails and superstructures thereon, as heretofore stated, was objected to by the complainant as the destruction or impairment of the security of said mortgages, but, as some of the holders of the consolidated bonds were of opinion that it was better to run the road through the tunnel, it had asked the court, as hereinbefore stated, to have the matter investigated by a master, which inquiry the court had refused to make, and, without hearing, had authorized the receiver to dismantle said portion of the road; that by reason thereof the security given in said mortgages was greatly depreciated. The answer further alleged that the representations made by the receiver and the Midland Railroad Company and its agents, that it was greatly to the interest of the railroad and bondholders that, in lieu of operating the road over the summit of the mountain, the road should be run through the tunnel, whereby the cost of operation would be lessened, etc., induced the bondholders to rely thereon, and failed to instruct the complainant to prevent the Midland Company from using and operating the tunnel railway, and that the Central Trust Company was thereby induced to take no other action than that specified in its answer to the petition for the abandonment of the line over the summit of the mountain. The answer then alleged that these representations of the receiver and others respecting the advantage of operating the road through the tunnel were not true, and that by reason of this change great loss had come to the parties in interest. The answer then averred the belief of the complainant that it would be more advantageous to the trust estate to rehabilitate and operate the road from Busk to Ivanhoe over the original track, than to maintain and operate the tunnel line under the contract and lease. It was then alleged that the receivers had already paid on this tunnel contract, for interest, $175,000; that said sum was excessive and unjust; that the earnings of the trust estate were insufficient to enable the receiver to pay the interest accruing upon the tunnel bonds. Wherefore the complainant prayed that the order of February 11, 1895, be set aside; that a reference to the master be had, or hearing before the court, to determine what amount, if any, should be paid for the use of the tunnel railway during the receivership. The receiver, Ristine, in his answer, stated it as his opinion that the contract between the Midland Railroad Company and the Tunnel Company was improvident, and that it was not to the interest of the Midland Railroad Company to continue it, and that it was the wiser policy to rehabilitate the abandoned track over the mountain, and to abandon the tunnel track. To the answer of the Central Trust Company, the Continental Trust Company filed exceptions. These exceptions were mainly sustained by the court. And thereupon the court made its order and decree sustaining the intervening petition of the Continental Trust Company, reaffirming the order of February 11, 1895, declaring it in force during the pendency of the receivership, and directed the receiver to pay, as an operating charge of the receivership, the rentals provided for in the trackage agreement and the lease during the continuance of the pos-

session of said road by the receiver, with interest thereon at the rate of 6 per cent. from its maturity, and also decreed that, in the event of the receiver's failure to pay same, such unpaid rentals and interest and costs of intervention should be a lien upon the mortgaged property, and, upon sale under foreclosure, the same should be paid out of the proceeds thereof in preference to either of said mortgages. From the action of the court in sustaining said exceptions, and declaring the unpaid rentals and interest aforesaid to be an operating expense of the receivership, and a first lien on the mortgaged premises, the Central Trust Company prosecutes this appeal.

Henry T. Rogers (Wm. Allen Butler, John Notman, Adrian H. Joline, Wilhelmus Mynderse, Lucius M. Cuthbert, and Daniel B. Ellis, on brief), for appellants.

Charles W. Waterman (Edward O. Wolcott, Joel F. Vaile, and Frederic J. Stimson, on brief), for appellee Continental Trust Co. of City of New York.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

The first matter for consideration is the motion filed by the appellee the Continental Trust Company to dismiss the appeal for the reasons— first, that there is no proper assignment of errors filed in this cause; second, because the record does not show a joint appeal of the Central Trust Company and the receiver, George W. Ristine; and, third, because there was no citation issued against the receiver, Ristine. The only assignment of errors is found in the petition for appeal. After reciting the decree, whereby the court declared the rental interest on account of the tunnel track to be a primary lien upon the corpus of the property, this petition stated as follows:

"In which order or decree the said complainant and the said receiver say that there was error, in this, to wit: that the court erred in sustaining those certain exceptions of the intervener the Continental Trust Company, filed herein, to those certain respective answers of the said complainant the Central Trust Company and the said receiver, filed herein, and in making and entering said order or decree."

Rule 11 of this court (21 C. C. A. cxii., 78 Fed. cxii.) requires that:

"The plaintiff in error, or appellant, shall file with the clerk of the court below, with his petition for writ of error or appeal, an assignment of errors, which shall set out separately and particularly each error asserted and intended to be urged."

Having regard to substance, rather than mere form, it certainly is of no consequence that the assignment of errors is contained in the petition for appeal, instead of being expressed in a separate paper. When the errors are incorporated into the petition for appeal, and the petition is then filed with the clerk, the assignment of errors is necessarily filed with the petition.

It is further objected that the specification of errors is too general and indefinite. The object of the rule in requiring the errors relied upon to be separately and particularly asserted is to enable the court to understand what questions it is called upon to decide, so it may not have to go beyond the assignment of errors itself to discover the blot, and also that the exceptor may be confined to the objections actually

taken below. Van Gunden v. Iron Co., 3 C. C. A. 294, 52 Fed. 840. Where various errors are relied on, presenting different propositions, they should be separately and distinctly set forth; but where the errors complained of present a single proposition of law, common to all of them, there can be no reasonable objection to assigning error to the group, as was done in this case. Andrews v. Pipe Works, 22 C. C. A. 110, 76 Fed. 170, 171. The errors complained of in this assignment go solely to the action of the circuit court in overruling the exceptions to the complainant's answer, and to the final decree, whereby the court ruled that the unpaid interest which represented the rental of the tunnel track should be a lien upon the mortgaged property, to be paid in preference to the mortgage debts. In view of the fact that the court sustained all of the exceptions made to the answer, and the principle of law arising thereon is common to each portion of the answer ruled out, and to the decree as above stated, involving, in effect, but one question, the assignment of errors is reasonably specific.

Neither is the objection good that the receiver is not a party to this appeal. He joined in the petition for appeal, and the appeal was granted by the court, although he did not join in executing the appeal bond. The bond, however, was executed by the co-appellant, under order of the court, and was accepted by the court. This was sufficient to perfect the appeal. Brockett v. Brockett, 2 How. 238; 2 Beach, Mod. Eq. Prac. § 958. It seems that in the printed record the name of the receiver as a party to the appeal was omitted by an oversight of the clerk. This was corrected by the clerk, as was not only permissible, but proper, in order to make the mere clerical work conform to the true record.

In respect to the objection that no citation on the appeal was issued to the receiver, it is sufficient to say that, as the appeal was taken and perfected in open court during the term at which the decree was rendered, no citation was necessary. Dodge v. Knowles, 114 U. S. 436, 438, 5 Sup. Ct. 1108, 1197; Hewitt v. Filbert, 116 U. S. 142, 6 Sup. Ct. 319; Brown v. McConnell, 124 U. S. 491, 8 Sup. Ct. 559. The motion to dismiss the appeal is overruled, at the costs of the appellee the Continental Trust Company.

This brings us to the consideration of the merits of the appeal. The statement of facts may seem to cover too much of mere detail, but it is deemed essential to a correct understanding of Judge Caldwell's various rulings.

It is to be conceded to appellant's contention that the mere order of the court directing the receivers to take charge of the property of the insolvent railroad, including its leased lines, and the taking possession thereof by the receivers, did not have the effect to either change the title to the property, or right of possession in the property. The receivers thereby became the mere custodians of the property for the court. "If the order of the court under which the receiver acts embraces the leasehold estate, it becomes his duty, of course, to take possession of it. But he does not, by taking such possession, become the assignee of the term, in any proper sense of the word. He holds that as he would hold any other personal property involved,—for and as the hand of the court, and not as assignee of the term." Gaither

v. Stockbridge, 67 Md. 224, 9 Atl. 632, and 10 Atl. 309, approved in Railroad Co. v. Humphreys, 145 U. S. 98, 12 Sup. Ct. 787.   In respect to leased lines held by the insolvent railroad, the receiver is accorded a reasonable time in which to ascertain the value and importance of the lease, and to make his election as to whether he will surrender or adopt it; but if, after due investigation, the receiver decides that it is best not to sell or surrender the leasehold interest, because it is indispensable to the successful operation of the trust estate, and the court, on consideration, so determines, and notifies the lessor, and thereafter continues the possession, such acts would constitute an adoption of the lease, and, of consequence, carry with it the obligation of the receiver to pay according to the stipulations of the lease.   Chief Justice Fuller, in Railroad Co. v. Humphreys, 145 U. S. 99, 12 Sup. Ct. 793, discussing this question, cited approvingly the language of Lord Justice Lindley in Re Oak Pits Colliery Co., 21 Ch. Div. 322, 330:

"If the liquidator has retained possession for the purpose of winding up, or if he has used the property for carrying on the company's business, or has kept the property in order to sell it, or to do the best he can with it, the landlord will be allowed to distrain for rent which has become due since the winding up. But if he has kept possession by arrangement with the landlord, and for his benefit, as well as for the benefit of the company, and there is no agreement with the liquidator that he shall pay rent, the landlord is not allowed to distrain. * * * When the liquidator retains the property for the purpose of advantageously disposing of it, or when he continues to use it, the rent of it ought to be regarded as a debt contracted for the purpose of winding up the company, and ought to be paid in full, like any other debt or expense properly incurred by the liquidator for the same purpose; and in such a case it appears to us that the rent for the whole period during which the property is so retained or used ought to be paid in full, without reference to the amount which could be realized by a distress."

What does the record in this case disclose?   When the receivers were appointed, the managing officers of the Midland Railroad Company had, for what they conceived to be the best interests of the road, made a trackage agreement and lease of the Tunnel Company, to run until 1935.   They had abandoned the more perilous, and, as they supposed, more expensive, route, over the summit of the mountain between Busk and Ivanhoe, and were using instead thereof the tunnel track. Possession of the tunnel track was taken by the receivers under the order of court made pursuant to the prayer of the bill of foreclosure. So persuaded were the receivers, after due test, that it was to the interest of the estate to continue the use of the tunnel track, they presented to the court a petition stating that by reason of the abandonment of the summit track, and the exposure of the works to the severe storms and elements, the overhead passway had become impractical, and the property impaired, and therefore prayed for an order authorizing them to dismantle this track, and reuse the materials on other portions of the Midland road.   While it cannot be said that the appellant assented to this proceeding, its objection was not to the continued use of the tunnel track, but it made only an advisory suggestion, that its constituents were undecided in opinion as to the advisability of removing the rails, etc., from the summit track.   The court, on the hearing, granted the prayer of the receivers.   The rails were accordingly removed, and presumptively appellant received the benefit thereof, in the

improvement of other portions of the mortgaged road. This action of the court was administrative in its character, addressed to the sound discretion and business judgment of the chancellor in the management of the estate, which this court could not now correct, as the injury, if any, is irreparable. Mercantile Trust Co. v. Farmers' Loan & Trust Co., 49 U. S. App. 462, 26 C. C. A. 383, and 81 Fed. 254. If it was judicial in character, the complainant had its day in court, and failed to appeal from the order. The order was the complete determination of that subject-matter, and, when executed, the book was closed, as to the transaction. This was followed up by the trustee of the lessor intervening in the cause, claiming that its rentals had not been paid by the receivers, praying for an order directing the receivers "to carry out and perform such trackage and lease agreements." On this petition was based the decree of February 11, 1895, by which the court "authorized and directed [the receivers] to carry out and perform the trackage agreement of the 17th of June, and the agreement of lease of the 19th of June, 1890, and to pay as an operating charge of the said Colorado Midland Railroad Company the rentals and interest charges provided for in said agreements, including all defaulted or overdue interest coupons of the bonds of said Busk Tunnel Railway Company." If this was not, in effect, an adoption of the terms and obligations of the lease by the court, it must be held that nothing short of words such as "it is ordered that the lease is hereby adopted" would have the effect of an adoption. When the court, after holding the leased track one year, and being advised that it had become so far an integral part of the system that the main line could not well be operated without the leased track, ordered the receiver to carry out and perform the contract of lease, it not only did the act, but entered the apt order evidencing the adoption of the lease. Moreover, this appellant, thereafter, both by expression and implication, recognized the fact. In its supplemental amended bill it recited that the receivers held, used, and employed the tunnel track "under and in pursuance of the terms of said lease"; and, as showing its indispensability to the estate, it alleged that the main road "has no means of operating its trains between said points, Busk and Ivanhoe, except over said road of the said Busk Tunnel Railway Company." The continuity and operation of the main line being admitted by all the parties to the record to be dependent upon the leased track, coupled with the order of the court that the receivers carry out and perform the contract of lease, are the important things which distinguish this case from all those cited by the learned counsel in support of their contention that the receivership did not adopt the contract of lease. As the law implies the fact of adoption from the mere refusal of the court to surrender possession to the lessor on his application, how much more conclusive of an adoption when both the trustee and the receiver assert that the possession is indispensable to the estate, and the court not only retains possession, but orders the receiver to keep and perform the contract of lease! Having thus held the leased property, the chancellor, in good conscience, could not do less than he did in the order of February 11, 1895. In this view of the case, it is not essential to say that by the decree of February 11, 1895, the question of whether or not this rental became

an operating charge on the corpus of the property passed in rem judicatum. It is sufficient to say that the propriety and necessity of that order pertain so much, at least, to the administrative discretion in managing the estate, that, after all the parties have acted upon it, this court ought not to disturb it. Mercantile Trust Co. v. Farmers' Loan & Trust Co., supra.

The only remaining important question is, was the final decree right, in giving a preferential lien for the unpaid rentals which accrued after January 1, 1896? By the order of February 11, 1895, the court had expressly recognized the rental fixed in the contract of lease as an operating expense. At no time thereafter did it notify the lessor or trustee of any recession from this position. It is no answer to this to say that the appellee never demanded possession of the leased property. The receivers and the court had declared that its possession and use were essential to the receivership, and the court had ordered the receivers to carry out and perform the contract. If the lessor was content with this arrangement, it was not essential to fix the adoption that he should go through the empty form of demanding that which the court and the parties had in fact said that they could not concede. Neither is it any answer to say that the complainant did not assent to said order, or that the court made it without reference to a master. The complainant was before the court, and the court was not required to make a reference. It was in possession of the facts, and the complainant offered no countervailing evidence. Neither is it any answer now to say that, inasmuch as the lessor was not able to put the property to any earning use had it been turned over to it, it is inequitable to the estate to charge it with the whole contract rental. If there is any justification in obtaining possession of another's property, as a dependent lease to an insolvent estate, and then saying to the owner that, although the receiver elected to hold it, he should not pay the rental stipulated in the lease, because the property would be comparatively useless if turned over to the owner, what is to be said of its value to the liquidator, who admitted he could not get along without the property? If the lease was adopted, the law fixed the rental specified in the lease as the amount of compensation to be rendered. Again, the complainant, after the order of February 11, 1895, recognized the fact that both the court and the receivers were holding this leased property on the assumption that the interest rental was to be an operating expense. When the receivers petitioned the court for leave to borrow money to pay this rental, by issuing preferential certificates, to be made a lien on the corpus of the property, the appellant answered that its constituents did not oppose. What matters it, therefore, that the receivership later on was brought into such straits that it could not obtain, even on such primary security, money enough to meet the interest under the leased contract, and that the court thereupon undertook to suspend further operation of the decree of February 11, 1895? This, in effect, was nothing more than a forced loan. As to the Tunnel Company and the trustee, the action was without notice, and ex parte. It was done at the instance of the receivers, to relieve them from the mandatory order which they were unable to execute. And as a dernier ressort, in so far as it could, the court suspended payment for a time,

subject to the further order of the court; evidently reserving the right to secure the payment thereafter in such method as might be within the compass of a court of equity. Had the claim been for fuel, equipments, or service essential to the operation of the road, which the court at one time directed the receivers to pay out of the money to be obtained on loans to be made a primary lien on the corpus of the property, but, by reason of the inability to effect such loan, the court had made a further order suspending until otherwise ordered, this in no degree would have lessened the equitable obligation, nor diminished the power of the court, in the final decree of foreclosure and distribution, to order a preference in favor of such claims. In the language of this court in Mercantile Trust Co. v. Farmers' Loan & Trust Co., 49 U. S. App. 462, 26 C. C. A. 387, and 81 Fed. 258:

"If the court below properly accepted and adopted the leases, the rentals reserved under them became an integral part of the operating expenses of the trust estate in the hands of the receivers, the same as wages of hired men, the rent of leased engines or cars, the traffic balances due connecting roads, or any other ordinary expense of operation; and in this way claims of these rents secured preference in payment over those of all cestuis que trustent out of the proceeds of the railroads, as well as of their earnings during the receivership. The moneys expended and liabilities incurred by the receivers or trustees in the authorized operation, preservation, and management of the property intrusted to them constitute preferential claims upon the trust estate, which must be paid out of its proceeds before they can be distributed to the beneficiaries of the trust."

It is true that after July 1, 1896, the receiver, Ristine, expressed to the court the opinion that experience in operating the tunnel track under the terms of the lease had proven the impolicy, in an economic view, of abandoning the summit route between Busk and Ivanhoe, and recommended the rehabilitation of the abandoned track, and the surrender of the tunnel track. This, however, was not done during the operation of the road under the receivership, but, on the contrary, the retention and use of the tunnel track were continued to the end as theretofore. The receivers had no money to reconstruct the abandoned summit track, and this complainant did not offer to furnish it, nor did it make any application to the court to surrender the leased lines; but, on the contrary, it left unchanged its allegation in its latest supplemental bill "that the defendant has no means of operating its trains between Busk and Ivanhoe except over said road of said Busk Tunnel Railway Company." As the questions raised by the answer were answered by the law of the case, the exceptions thereto were properly sustained; and, as we find no error in the decree, the same is affirmed.